**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

REBECCA DAY, individually and on
behalf of all others similarly situated,

                    Plaintiff,

      v.

TRACTOR SUPPLY COMPANY,

                Defendant.

CIVIL ACTION NO.:
1:22-cv-00489-JLS

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ..................................................................................................... 1

LEGAL STANDARD .............................................................................................. 2

BRIEF CONTEXTUAL BACKGROUND............................................................. 3

ARGUMENT ........................................................................................................... 4

I. PLAINTIFF HAS ARTICLE III STANDING ............................................... 4

    A.    Plaintiff is Not Required to Allege Specific Investments She
            Would Have Made if She Was Hypothetically Paid on Time ............... 4

    B.    The *Maddox* And *TransUnion* Decisions Support A Finding Of
            Concrete Injury ..................................................................................... 8

            1.    The Late Payment of Wages Is Unlike The Hypothetical
                    Harms At Issue In *Transunion* And *Maddox* ...............................8

            2.    The New York Legislature's Intent Is "Instructive"....................9

II. DEFENDANT'S SEPTEMBER 2019 AUTHORIZATION DOES NOT
     ABSOLVE ITS PRIOR VIOLATIONS OF NYLL § 191 ............................. 10

III. A PRIVATE RIGHT OF ACTION EXISTS UNDER NYLL § 191 ............. 12

    A.    The First Department's Ruling in *Vega* Controls This Action ........... 12

    B.    14 Out Of 14 Courts To Consider *Vega* Have Held That An
            Employee Has A Private Right Of Action For Late Wage
            Payments; Zero Have Disagreed......................................................... 13

IV. THERE IS AN EXPRESS PRIVATE RIGHT OF ACTION FOR
     VIOLATIONS OF NYLL § 191........................................................................ 16

    A.    Legislative Memoranda From 1966 And 1967 Show An Intent To
            Create A Private Right Of Action With Liquidated Damages From
            Late Payment Of Wages ...................................................................... 16

    B.    Wages Become "Unpaid" If They Are Not Paid When Due ............... 18

    C.    The New York Department Of Labor Has Explicitly Held That A
            Private Right Of Action Exists ............................................................ 19

V. PLAINTIFF IS ENTITLED TO LIQUIDATED DAMAGES AND
     INTEREST......................................................................................................... 20

VI.     NYLL § 191 ALSO PROVIDES AN IMPLIED PRIVATE RIGHT OF
        ACTION ..................................................................................................................... 22

VII.    THE COURT IS NOT EMPOWERED TO GRANT DEFENDANT'S
        MOTION BASED ON A MERE DISAGREEMENT WITH *VEGA* ............................... 23

VIII.   DEFENDANT'S RULE 23 ARGUMENTS ARE PREMATURE AND
        MERITLESS................................................................................................................. 24

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Accosta v. Lorelei Events Grp.*,
  2022 WL 195514 (S.D.N.Y. Jan. 21, 2022) ............................................................... 15

*Article 70 of CPLR for a Writ of Habeas Corpus, The Nonhuman Rts. Project, Inc. ex rel.*
  *Hercules & Leo v. Stanley*,
  16 N.Y.S.3d 898 (N.Y. Sup. Ct. N.Y. Cty. 2015) .................................................... 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................... 2

*Beh v. Cmty. Care Companions Inc.*,
  2021 WL 3914297 (W.D.N.Y. Feb. 1, 2021) ............................................... 13, 18, 21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................. 2, 3

*Biggs v. Wilson*,
  1 F.3d 1537 (9th Cir. 1993) ....................................................................................... 19

*Carrera v. DT Hospitality Grp.*,
  2021 WL 6298656 (S.D.N.Y. Nov. 1, 2021) ....................................................... 15, 18

*Castanares v. Deutsche Lufthansa AG*,
  2021 WL 811455 (C.D. Cal. Jan. 26, 2021) ............................................................... 8

*Caul v. Petco Animal Supplies, Inc.*,
  2021 WL 4407856 (E.D.N.Y. Sept. 27, 2021) ................................................... passim

*Caul v. Petco Animal Supplies, Inc.*,
  2021 WL 6805889 (E.D.N.Y. Dec. 21, 2021) ........................................................... 24

*Chowdhury v. Hamza Express Food Corp.*,
  666 Fed. Appx. 59 (2d Cir. Dec. 7, 2016) ................................................................ 22

*Duverny v. Hercules Medical P.C.*,
  2020 WL 1033048 (S.D.N.Y. Mar. 3, 2020) ............................................................ 14

*Elhassa v. Hallmark Aviation Servs., L.P.*,
  2022 WL 563264 (S.D.N.Y. Feb. 24, 2022) ................................................. 14, 22, 23

*Ensminger v. Credit Law Ctr., LLC*,
  2019 WL 4341215 (D. Kan. Sep. 12, 2019) ............................................................... 8

*Farina v. Metro. Transp. Auth.*,
  409 F. Supp. 3d 173 (S.D.N.Y. 2019)....................................................................... 12

*Gillett v. Zara USA, Inc.*,
  2022 WL 3285275 (S.D.N.Y. Aug. 10, 2022) ................................................... passim

*Global Aircraft,*
  2021 WL 6777500 (N.Y. Sup. Queens Cty. Apr. 20, 2021)................................... 19

*Habitat Educ. Ctr. v. U.S. Forest Serv.*,
  607 F.3d 453 (7th Cir. 2010) ...................................................................................... 7

*Hardgers-Powell v. Angels in Your Home LLC*,
  330 F.R.D. 89 (W.D.N.Y. 2019) ............................................................................... 24

*Hicks v. T.L. Cannon Corp.*,
  35 F.Supp.3d 329 (W.D.N.Y. 2014) ......................................................................... 24

*IKEA U.S. Inc. v. Indus. Bd. of Appeals*,
  241 A.D.2d 454 (2d Dept. 1997) ............................................................................... 20

*Imbarrato v. Banta Mgmt. Servs., Inc.*,
  2020 WL 1330744 (S.D.N.Y. Mar. 20, 2020) .............................................................. 7

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
  928 F.3d 42 (D.C. Cir. 2019) ...................................................................................... 9

*Konkur v. Utica Academy of Science Charter Sch.*,
  38 NY3d 38 (2022) .................................................................................................... 22

*Mabe v. Wal-Mart Assocs., Inc.*,
  2021 WL 1062566 (N.D.N.Y. Mar. 18, 2021) .................................................... 1, 20

*Mabe v. Wal-Mart Assocs., Inc.*,
  2022 WL 874311 (N.D.N.Y. Mar. 24, 2022) ....................................... 14, 22, 23

*Maddox v. Bank of New York Mellon Trust Co.*,
  19 F.4th 58 (2d Cir. 2021) ...................................................................................... 8, 9

*Mazzola v. Roomster Corp.*,
  849 F. Supp. 2d 395 (S.D.N.Y. 2012)....................................................................... 25

*Moran Towing & Transp. Co. v. N.Y. State Tax Com.*,
  72 N.Y.2d 166 (1988) ................................................................................................ 20

*P & L Group v Garfinkel*,
  150 AD2d 663 (2d Dep't 1989) ................................................................................ 10

*Parker v. Time Warner Entm't Co.*,
331 F.3d 13 (2nd Cir. 2003) ................................................................. 12

*People v. Vetri*,
309 NY 401 (1955) ................................................................................ 10

*Phillips v. Max Finkelstein, Inc.*,
73 Misc. 3d 1 (N.Y. App. Term. 2021) ............................................. 14, 20

*Pontes v. Rowan Univ.*,
2021 WL 4145119, n.5 (3d Cir. Sept. 13, 2021) ................................... 9

*Porsch v. LLR, Inc.*,
380 F. Supp. 3d 418 (S.D.N.Y. 2019) .......................................... 1, 4, 5, 7

*Rana v. Islam*,
887 F.3d 118 (2d Cir. 2018) ................................................................. 21

*Reynolds v. Lifewatch, Inc.*,
136 F. Supp. 3d 503 (S.D.N.Y. 2015) .................................................. 25

*Rodrigue v. Lowe's Home Centers, LLC*,
2021 WL 3848268 (E.D.N.Y. Aug. 27, 2021) ............................... passim

*Rojas v. Hi-tech Metals, Inc.*,
2019 WL 4570161 (Queens Cnty. Sept. 11, 2019) ............................... 14

*Roth v. Jennings*,
489 F.3d 499 (2d Cir. 2007) ................................................................... 2

*Scott v. Whole Foods Market Group, Inc.*,
2019 WL 1559424 (E.D.N.Y. Apr. 9, 2019) ....................................... 14

*Sorto v. Diversified Maintenance Systems, LLC*,
2020 WL 7693108 (E.D.N.Y. Dec. 28, 2020) ........................... 14, 21, 23

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) .............................................................. 7, 9, 10

*Strubel v. Comenity Bank*,
842 F.3d 181 (2d Cir. 2016) ................................................................... 7

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) .............................................................. 8, 9, 10

*V.S. v. Muhammad*,
595 F.3d ................................................................................... 13, 23

*Van v. LLR, Inc.*,
   962 F.3d 1160 (9th Cir. 2020) ............................................................ 7, 8

*Vega v. CM & Assocs. Constr. Mgmt., LLC*,
   175 A.D.3d 1144 (N.Y. App. Div. 2019) ........................................ passim

*Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*,
   2016 WL 4704917 (S.D.N.Y. Sept. 8, 2016) ........................................ 22

*Zivkovic v. Laura Christy, LLC*,
   2022 WL 1684268 (S.D.N.Y. May 26, 2022) ....................................... 15

**STATUTES**

New York Labor Law ("NYLL") § 191 ............................................... passim

New York Labor Law ("NYLL") § 198 ............................................... passim

**RULES**

Fed. R. Civ. P. 8(a) ............................................................................... 2

**OTHER AUTHORITIES**

Spokeo: The Quasi-Hohfeldian Plaintiff and the Nonfederal Federal Question,
   25 Geo. Mason L. Rev. 583 (2018) ..................................................... 6

Under New York Labor Law ("NYLL") § 191, Defendant is required to pay its manual workers on a weekly basis. Complaint ("Compl.") ¶ 2 (ECF No. 1). Prior to receiving authorization from New York's Department of Labor in September of 2019, Defendant failed to do so. *Id.* ¶ 5. Nonetheless, Defendant seeks to dismiss Plaintiff's complaint based on arguments that have already been repeatedly considered and rejected by numerous New York courts.

First, Defendant argues that Plaintiff lacks Article III standing. MTD at 9-11. But "[t]hat argument fails to persuade" because "the late payment of wages is a concrete harm. '[T]emporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing.'" *Caul v. Petco Animal Supplies, Inc.*, 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021) (citing *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019)); *accord Gillett v. Zara USA, Inc.*, 2022 WL 3285275, at *5 (S.D.N.Y. Aug. 10, 2022) ("this delay of payment, in and of itself, constitutes a concrete harm that suffices for purposes of Article III.").

Defendant then argues that there is "no private right of action" under NYLL § 191. MTD at 16. But all of Defendant's arguments are belied by the holding of the highest New York state court to consider the issue—*Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144 (N.Y. App. Div. 2019)—where the First Department held that "New York Labor Law § 198(1-a) expressly provides a private right of action for a violation of Labor Law § 191." *Id.* at 1146. To no surprise, "[s]ince *Vega*, every court in this Circuit to consider that decision appears to have followed its construction of the New York Labor Law … and defendants present no persuasive reason to do otherwise." *Rodrigue v. Lowe's Home Centers, LLC*, 2021 WL 3848268, at *5 (E.D.N.Y. Aug. 27, 2021) (citing *Mabe v. Wal-Mart Assocs., Inc.*, 2021 WL 1062566, at *5 (N.D.N.Y. Mar. 18, 2021)).

Defendant's argument that liquidated damages are not available has also been repeatedly

rejected.  *See Vega*, 175 A.D.3d at 1145 (holding that "Section 198(1-a) allows an award of damages based on untimely payments" and that "underpayment" for purposes of Section 198(1-a) occurs "[t]he moment that an employer fail[s] to pay wages in compliance with section 191(1)(a)."); *Rodrigue*, 2021 WL 3848268, at *5 ("Here, a state intermediate court—the Appellate Division's First Department—has held that New York Labor Law permits employees to seek liquidated damages for the untimely payment of wages, even if wages are no longer past due.").

For the reasons set forth herein, all of Defendant's arguments are without merit, and there is no basis to depart from the First Department's ruling in *Vega*.  As detailed below, no Court to consider *Vega* has disagreed with its ruling.  The Court should decline Defendant's invitation to be the very first and should deny Defendant's motion accordingly.

## LEGAL STANDARD

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the Court must "accept the complaint's factual allegations, and all reasonable inferences that can be drawn from those allegations in the plaintiff's favor, as true." *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007). The notice pleading standard of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the ground upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)).  In fact, "the pleading of additional evidence, beyond what is required to enable the defendant to respond, is not only unnecessary, but in contravention of proper pleading procedure." *Roth*, 489 F.3d at 512 (internal quotations and alteration omitted).  At this stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

663 (2009) (quoting *Twombly*, 550 U.S. at 556).

## BRIEF CONTEXTUAL BACKGROUND

Section 191(1)(a)(i) of the New York Labor Law ("NYLL") states:

> 1. Every employer shall pay wages in accordance with the following provisions:
>
> a. Manual worker.--- (i) A manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned.

Section 198(1-a), in turn, provides that: "In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, <u>and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due</u>." (emphasis added).

Here, Plaintiff alleges "[a]t least 25% of [her] job responsibilities at TSC included manual labor, including tasks such as organizing and unloading inventory in the front and back of the store, frequently lifting heavy items onto shelves, cleaning duties including but not limited to sweeping and mopping floors, and wiping down shelves, and handling animals." Compl. ¶ 11.[1] She also alleges she "was paid every other week, rather than weekly, during the entirety of her employment with Defendant." *Id.* Thus, "Plaintiff and the Class are entitled to recover from Defendant the

---

[1] Per the New York Department of Labor, "[i]t has been the long-standing interpretation of this Department that individuals who spend more than 25% of working time engaged in 'physical labor' fit within the meaning of the term 'manual worker.' Furthermore, the term 'physical labor' has been interpreted broadly to include countless physical tasks performed by employees." *See* Kopel Decl., Ex. 1 (DEPARTMENT OF LABOR, *Frequency of Pay Frequently Asked Questions*, March 2021.

amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198." *Id.* ¶ 21.

<u>**ARGUMENT**</u>

I. **PLAINTIFF HAS ARTICLE III STANDING**

A. **Plaintiff is Not Required to Allege Specific Investments She Would Have Made if She Was Hypothetically Paid on Time**

Defendant argues Plaintiff lacks standing because she "fails to allege any facts as to the 'time value' she allegedly lost and what damages she suffered as a result of being paid bi-weekly versus weekly," that she "does not plead any facts as to what investment, earned interests, or other opportunities she was deprived of," and therefore her allegations are "too speculative." MTD at 11; *see also* MTD at 12 ("She does not allege how she would have invested her wages if she received them on a weekly instead of bi-weekly basis in a way that would have increased the value of those funds."). But that is wrong because such hyper-specific allegations are not required to allege Article III standing and, for this reason, Defendant's exact argument has been repeatedly rejected by courts within this Circuit in the NYLL § 191 context.

Indeed, just last month, Judge Failla of the Southern District rejected Defendant's argument while addressing the caselaw Defendant cites such as *Maddox*, *TransUnion*, *Spokeo*, and *Harty*. *See, e.g., Gillett v. Zara USA, Inc.*, 2022 WL 3285275, at *5 (S.D.N.Y. Aug. 10, 2022). Judge Failla explained as follows:

> Irrespective of the fact that Plaintiff ultimately received the entire sum of wages he was owed, this delay of payment, in and of itself, constitutes a concrete harm that suffices for purposes of Article III. This is because the "[t]emporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing." *Caul v. Petco Animal Supplies, Inc.*, No. 20 Civ. 3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021) (quoting *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019)). … This temporary withholding of money to which Plaintiff was owed — an injury Plaintiff purportedly suffered

4

> every pay period he worked for Defendants — is a concrete, economic harm. Framed differently, each time Plaintiff received late compensation for the work he performed, Defendants underpaid him for the work he performed.

*Zara*, 2022 WL 3285275, at *6 (citing *Vega*, 107 N.Y.S.3d at 288); *see also Porsch*, 380 F. Supp. 3d at 424 ("It is a basic princip[le] of economics and accounting that 'a dollar today is worth more than a dollar tomorrow.").

Judge Failla further clarified that "[e]ven without any additional facts about how [plaintiff] would have used his wages if he had received them in a timely fashion, Plaintiff has alleged a concrete harm resulting from Defendants' alleged violation of Section 191." *Zara*, 2022 WL 3285275, at *6; *see also id.* at *7 ("This Court does not read *TransUnion* or any other binding precedent to require a plaintiff to specify how he intended to take advantage of the time value of his wages if they had not been improperly withheld for a period of time. The factual allegations of the Amended Complaint establish that Plaintiff here was deprived of the time value of the money that Defendants illegally delayed. As such, Plaintiff has suffered an injury in fact for which he may seek redress in federal court, regardless of his intentions with respect to the delayed funds.").

Judge Failla's reasoning is in line with another partial denial of a motion to dismiss issued less than a month ago another similar NYLL § 191 class action captioned *Rodriguez v. Williams-Sonoma, Inc.*, Case No. 22-cv-02436-GRB-JMW (E.D.N.Y.). There, Judge Brown rejected the defendant's argument that plaintiff lacked Article III standing for want of a concrete injury, holding that the time value of money lost due to defendant's delayed wage payments was sufficient to confer standing. *See* Kopel. Decl., Ex. 2, at pp. 22 of 28 ("[I]n this instance, I believe that the allegations are sufficient. … I do believe there's sufficient inference here that the [] plaintiff had some actual concrete loss if in fact the claim proves to be the case. That is he was entitled to weekly pay and he got biweekly pay. There is based on time value of money some inferential

basis to believe that there was some loss.").

More recently, Judge Chen held in a NYLL § 191 class action that "[t]emporary deprivation of money to which a plaintiff has a right constitutes sufficient injury in fact to establish Article III standing. … The Court flatly rejects Defendant's argument that Plaintiffs must plead 'specific factual allegations pertaining to their financial strategies or investment practices' to establish standing. That would impose a pleading standard far higher than anything articulated by the Supreme Court or Second Circuit." *Jones v. Nike Retail Svcs., Inc.*, 2022 WL 4007056, at *1 (E.D.N.Y. Aug. 30, 2022).

Defendant's argument was also rejected in the NYLL § 191 context by Judge Matsumoto in *Davis v. Banana Republic, LLC*, Case No. 21-cv-06160-KAM (E.D.N.Y. Apr. 5, 2022), where she held "I don't think [Article III standing] is a basis on which the defendant would be successful in moving to dismiss. I just think the case law is really trending the other way and I would look to the many cases where the Courts have found an injury based on a violation of the New York Labor Law Section 191, especially if a laborer is deprived, even for a week or two, of the earned wages." Kopel Decl., Ex. 3, at pp. 4. And just a few months prior, Judge Seibel expressed the same sentiments while denying the motion to dismiss in *Corporan v. Regeneron Pharmaceuticals, Inc.*, Case No. 21-cv-05069-CS (S.D.N.Y. Jan. 24, 2022), Kopel Decl., Ex. 4, at pp. 9-10 ("[W]here an employee loses the use of his money, it affects his ability to pay bills, buy food, medicine or gasoline, participate in savings and investment opportunities, and that's true whether or not the wages are never paid, partially paid, or as here, paid late. … I, therefore, find that plaintiff here alleges a concrete harm sufficient for Article III standing.").

Defendant's argument was also rejected by Judge Kovner of the Eastern District in *Caul v. Petco Animal Supplies, Inc.*, 2021 WL 4407856 (E.D.N.Y. Sep. 27, 2021). There, the defendant

argued "that an employee who has been paid all her wages but paid late would lack standing under Article III because she could only 'allege a bare procedural violation, divorced from any concrete harm.'" *Id.* at \*4 (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)). But Judge Kovner rejected this argument:

> **[T]he late payment of wages is a concrete harm. "[T]emporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing."** *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019); *cf. Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010) ("Every day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money."). That injury is especially acute for those workers "who are generally dependent upon their wages for sustenance," *Vega*, 175 A.D.3d at 1146.

*Id.* (emphasis added, internal citations omitted). This Court has subject matter jurisdiction for these same reasons articulated in these cases. *See also Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016) ("[w]e do not understand *Spokeo* categorically to have precluded violations of statutorily mandated procedures from qualifying as concrete injuries supporting standing … some violations of statutorily mandated procedures may entail the concrete injury necessary for standing"); *Imbarrato v. Banta Mgmt. Servs., Inc.*, 2020 WL 1330744, at \*7 (S.D.N.Y. Mar. 20, 2020) (denying defendants' *Spokeo* argument to dismiss NYLL claims where the legislature had "conferred the procedural right in order to protect an individual's concrete interests").

Lastly, the Ninth Circuit has aptly explained that a plaintiff need not "allege specific plans to invest its money into an interest-bearing asset to establish standing based on a temporary deprivation of money." *Van v. LLR, Inc.*, 962 F.3d 1160, 1165 (9th Cir. 2020). The Ninth Circuit reasoned as follows:

> This argument misstates Van's claimed injury. Van does not assert that she is injured because she lost interest income. She asserts that she is injured because she lost the use of her money. Consistent with our opinion here, although the former injury may be speculative, the

> latter injury is actual, concrete, and particularized. Interest is simply a way of measuring and remedying Van's injury, not the injury itself.

*Id.* at 1164-65.

The Ninth Circuit's holding exposes the flaw in Defendant's position. Plaintiff was injured because she could not use or invest her delayed funds, as the Complaint alleges. That is "actual, concrete, and particularized." *Id.* But in arguing that Plaintiff is required to allege what specific investments she *would have* put the money into *if she had been paid in a timely fashion*, Defendant is asking Plaintiff to engage in the very sort of speculative and hypothetical exercise that cannot form the basis for standing. That makes no sense. Other courts have not required allegations regarding alternative uses for monies wrongfully withheld beyond alleging that plaintiffs were deprived from using their money and lost its time value. *See Ensminger v. Credit Law Ctr., LLC*, 2019 WL 4341215, at *4 (D. Kan. Sep. 12, 2019) (finding the "plaintiff suffered a concrete financial injury if he was deprived the use of his money" where "plaintiff has specifically alleged … that he suffered an injury in the form of the lost time value of money"); *Castanares v. Deutsche Lufthansa AG*, 2021 WL 811455, at *3 (C.D. Cal. Jan. 26, 2021) ("Plaintiffs allege that Lufthansa breached the Conditions of Carriage by failing to refund their purchase within a reasonable period of time and that this breach resulted in Plaintiffs' loss of the time value and use of their money. (FAC ¶ 12). These facts alleging economic harm suffice to demonstrate that Plaintiffs suffered a 'concrete,' 'real and not abstract' injury").

### B. The *Maddox* And *TransUnion* Decisions Support A Finding Of Concrete Injury

#### 1. The Late Payment of Wages Is Unlike The Hypothetical Harms At Issue In *Transunion* And *Maddox*

The harm Plaintiff alleges here—the loss use of money—stands in stark contrast to the hypothetical harms confronted in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) and *Maddox*

*v. Bank of New York Mellon Trust Co.*, 19 F.4th 58 (2d Cir. 2021). In *TransUnion*, the plaintiffs' "credit files, which were maintained by TransUnion, contained misleading OFAC alerts." *Id.* at 2209. However, the plaintiffs could not demonstrate that "the inaccurate OFAC alerts in [plaintiffs'] TransUnion credit files were ever provided to third parties or caused a denial of credit" or "that the 6,332 class members even knew that there were OFAC alerts in their internal TransUnion credit files." *Id*. at 2211-12. Thus, it was merely a risk of future harm that never materialized, which was not sufficiently concrete. *Id.* Similarly, in *Maddox*, the plaintiffs alleged the defendant violated New York's mortgage-satisfaction-recording statutes by failing to record their satisfaction of a mortgage loan until nearly one year after it was fully paid. *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 60 (2d Cir. 2021). However, although "the Maddoxes contend[ed] the Bank's delay adversely affected their credit during that time, making it difficult to obtain financing had they needed it in an emergency or for a new home … it is not alleged that this purported risk materialized," and thus could not give rise to Article III standing. *Id.* at 65.

Here, Plaintiff lost the time value of the money owed to her. *See* Compl. ¶ 11. It was not hypothetical, it *did* materialize, and it constitutes concrete harm sufficient to confer standing. *See Pontes v. Rowan Univ.*, 2021 WL 4145119, at *4, n.5 (3d Cir. Sept. 13, 2021) ("In fact, several sister circuits have held that temporary loss of use of money is <u>itself</u> a sufficiently concrete injury to establish standing.") (emphasis added); *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 66 (D.C. Cir. 2019) ("The delay in those Plaintiffs' receipt of their refunds, and the forgone time value of that money, is an actual, tangible pecuniary injury.").

### 2.    The New York Legislature's Intent Is "Instructive"

In *TransUnion*, the Supreme Court explained, "[i]n determining whether a harm is sufficiently concrete to qualify as an injury in fact, the Court in *Spokeo* said that Congress's views

may be 'instructive.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204, 210 L. Ed. 2d 568 (2021) (citing *Spokeo*, 578 U.S. at 341). To that end, it is important to examine New York's legislative intent behind NYLL §§ 191, "which is to protect workers who are generally 'dependent upon their wages for sustenance' … and section 198, which was enacted to deter abuses and violations of the labor laws[.]" *Vega*, 175 A.D.3d at 1146 (citing *People v. Vetri*, 309 NY 401, 405 (1955) and *P & L Group v Garfinkel*, 150 AD2d 663, 664 (2d Dep't 1989) (section 198 "reflect(s) a strong legislative policy aimed at protecting an employee's right to wages earned")).

Against this backdrop, it is clear the New York Legislature enacted NYLL § 191 to make sure the poorest among us would have access to wages in a timely manner, thereby demonstrating its intent to address a harm it deems concrete. This was not some lofty and abstract policy goal, it was specifically enacted so that financially disadvantaged persons would have timely access to their pay, in particular because they are less likely to have financial reserves to carry them until their next paycheck. This evinces an understanding on the part of the New York Legislature that manual workers are concretely injured when they receive payment in an untimely fashion. There is no need to specify which groceries, rent payments, car bills, or investments Plaintiff hypothetically would have put the money towards if she was paid in a timely fashion.

## II.    DEFENDANT'S SEPTEMBER 2019 AUTHORIZATION DOES NOT ABSOLVE ITS PRIOR VIOLATIONS OF NYLL § 191

Defendant argues that Plaintiff is "attempting to usurp the authorization TSC received three years ago to claim that TSC is nevertheless still in violation of NYLL § 191." MTD at 15. But Plaintiff does not allege that Defendant is still in violation of NYLL § 191. To the contrary, the Complaint alleges, "Defendant received authorization from the New York State Department of Labor Commissioner on September 17, 2019, but prior to that, Defendant had no such authorization to pay its worker on a bi-weekly basis." Compl.¶ 3; *see also* Kopel Decl., Ex. 5, at

pp. 11 of 12 (showing that authorization was **issued** on September 17, 2019). Thus, Defendant violated NYLL § 191 "by paying its manual workers every other week rather than on a weekly basis prior to September 17, 2019." Compl. ¶ 5. That is why Plaintiff seeks to represent "a putative class comprised of all manual workers employed by Defendant in New York State from approximately June 24, 2016 to September 16, 2019." *Id.* ¶ 6. As such, there is no basis for dismissal—Plaintiff only asserts a claim for when Defendant was in violation of Section 191.

Next, although Defendant admits that it violated Section 191 prior to receiving authorization, Defendant suggests that its authorization somehow retroactively absolves it from liability altogether – including for violations predating September 17, 2019. *See* MTD at 16 ("The Labor Law is devoid of any requirement that an employer must pay liquidated damages equal to one-half of past wages for any period its manual workers were not paid on a weekly basis even *after* the Commissioner granted authorization to an employer, based on paying its employees bi-weekly prior to the authorization."). But that is nonsense. If Defendant's position were correct, any employer who had been in violation of Section 191 could absolve itself of liability by seeking authorization after the fact. To the contrary, nothing in the Labor Law suggests that an authorization can have retroactive application.

Finally, Defendant argues that allowing Plaintiff to recover damages in this lawsuit "would run afoul of due process and Eighth Amendment Excessive Fines principles and would be far disproportionate to Plaintiff's claimed injury." MTD at 16. But this exact argument was rejected by Judge Kovner in *Rodrigue*, 2021 WL 3848268, at *6:

> [A] challenge of this sort is premature. At this stage of the case, there has been no liquidated damages award, and there is no record on which to assess whether an award would be excessive …
>
> Even if Defendant was correct that liquidated damages equal to "the amount of all late payments" would violate the Due Process Clause,

> defendants have offered no reason why they would be entitled to
> dismissal of plaintiff's claim—rather than a reduction in damages.

Judge Kovner's holding is well-founded. The Second Circuit has explained that any arguments about whether damages are constitutionally excessive "remain hypothetical" where "[t]here has been no class certification motion filed nor any actual evidence that raises a reasonable possibility that principles of due process may restrict an ultimate damages award" and courts should therefore "decline to consider what limits the due process clause may impose" at such an early stage. *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2nd Cir. 2003). Indeed, courts have held that "challenges under the Excessive Fines Clause are ... generally not ripe until the actual, or impending, imposition of the challenged fine." *Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 195 (S.D.N.Y. 2019). In sum, this is no basis for dismissal.

## III. A PRIVATE RIGHT OF ACTION EXISTS UNDER NYLL § 191

### A. The First Department's Ruling in *Vega* Controls This Action

The First Department has explained that "Labor Law § 198 (1-a) expressly provides a private right of action for a violation of Labor Law § 191." *Vega*, 175 A.D.3d at 1146. And "even if Labor Law § 198 does not expressly authorize a private action for violation of the requirements of Labor Law § 191, a remedy may be implied since plaintiff is one of the class for whose particular benefit the statute was enacted, the recognition of a private right of action would promote the legislative purpose of the statute and the creation of such a right would be consistent with the legislative scheme." *Id.* Thus, in *Vega*, the First Department found two alternative bases for its decision that a private right of action exists for NYLL § 191 claims.

The *Vega* decision constitutes guidance from the highest state court to address this issue to date. Accordingly, because there is no case law from the Court of Appeals on this issue, this Court is bound by the holding of the New York's First Department in *Vega* unless there is "persuasive

evidence" that the Court of Appeals would hold otherwise. *See V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010). But no such "persuasive evidence" exists. The *Vega* decision was unanimously issued by all five judges sitting on the First Department's panel without any dissent. *See Gillett v. Zara USA, Inc.*, 2022 WL 3285275, at *11 (S.D.N.Y. Aug. 10, 2022) ("Because Defendants offer no 'persuasive evidence that the state's highest court would reach a different conclusion' than the First Department did in Vega, the Court is 'bound to apply the law as interpreted by' the intermediate appellate court.") (internal citations omitted).

**B.      14 Out Of 14 Courts To Consider *Vega* Have Held That An Employee Has A Private Right Of Action For Late Wage Payments; Zero Have Disagreed**

Since *Vega*, at least 14 courts have adopted its holding, and zero courts to consider *Vega* have disagreed with its ruling. Defendant offers no basis why this Court should be the first.

"Since *Vega*, every court in this Circuit to consider that decision appears to have followed its construction of the New York Labor Law … and defendants present no persuasive reason to do otherwise." *Rodrigue v. Lowe's Home Centers, LLC*, 2021 WL 3848268, at *5 (E.D.N.Y. Aug. 27, 2021); *see also Beh v. Cmty. Care Companions Inc.*, 2021 WL 3914297, at *3 (W.D.N.Y. Feb. 1, 2021), *report and recommendation adopted*, 2021 WL 3914320 (W.D.N.Y. June 23, 2021) (citing *Sorto* and *Duverny*, and holding [f]or these reasons, the Court concludes that there is a private right of action for violations of NYLL § 191."); *Zara*, 2022 WL 3285275, at *12 ("Thus, applying *Vega*, the Court finds that the NYLL affords a private right of action to enforce the late payment of wages."); *Caul v. Petco Animal Supplies, Inc.*, 2021 WL 4407856, at *2 (E.D.N.Y. Sep. 27, 2021) ("Section 191 permits a manual worker to bring a civil action for delayed payment of wages—even if the wages have subsequently been paid."); *Quintanilla v. Kabco Pharm., Inc., et al.*, Case No. 2:19-cv-06752-PKC, ECF No. 18 (E.D.N.Y.) (June 30, 2020 Minute Entry) (rejecting argument that plaintiff did not have private right of action to pursue Section 191 claim

"in light of the *Vega* decision"); *Corporan*, Kopel Decl., Ex. 4 at pp. 14-15 ("Since *Vega* was decided in 2019, every court in this Circuit to consider the decision appears to have followed it. … Defendant presents no compelling reasons for me to buck this trend… I find that decision, and the logic of other courts within this Circuit applying it, to be well-reasoned and persuasive."); *Davis*, Kopel Decl., Ex. 3 at pp. 4 (agreeing with *Vega* and rejecting argument that plaintiff lacks private right of action); *Rojas v. Hi-tech Metals, Inc.*, 2019 WL 4570161, at *4 (Queens Cnty. Sept. 11, 2019) ("In light of the sentiments set forth in *Gottlieb* by the Court of Appeals and the holding in *Vega*[,] Defendant's motion to dismiss Plaintiff's NYLL §§ 191(1)(a) and 198 (1-a) claims is denied."); *Scott v. Whole Foods Market Group, Inc.*, 2019 WL 1559424, at *4 (E.D.N.Y. Apr. 9, 2019) ("The discretionary nature of the Commissioner's authority coupled with the references to employee actions in § 198 compels the conclusion that a private action under § 191 is consistent with the legislative scheme."); *Mabe v. Wal-Mart Assocs., Inc.*, 2022 WL 874311, at *8 (N.D.N.Y. Mar. 24, 2022) ("[T]he Court is not convinced that the New York Court of Appeals would reach conclusions different than those expressed in *Vega*. … the Court finds that under *Vega*, Plaintiff presents a legally plausible claim in the First Cause of Action."); *Duverny v. Hercules Medical P.C.*, 2020 WL 1033048, at *5-6 (S.D.N.Y. Mar. 3, 2020) (following *Vega*, noting that "[a] plaintiff's entitlement to statutory damages pursuant to § 198(1-a) survives even if the employer pays the employee's base wages prior to the commencement of a civil action"); *Sorto v. Diversified Maintenance Systems, LLC*, 2020 WL 7693108, at *3 (E.D.N.Y. Dec. 28, 2020) ("Accordingly, the Defendant's objections are OVERRULED … permitting a private right of action is appropriate.") (internal quotation omitted); *Phillips v. Max Finkelstein, Inc.*, 73 Misc. 3d 1, 3 (N.Y. App. Term. 2021) (agreeing with *Vega* "that a private right of action exists to enforce the rights established under section 198"); *Elhassa v. Hallmark Aviation Servs., L.P.*, 2022 WL

563264, at *2 (S.D.N.Y. Feb. 24, 2022) ("The New York Appellate Division First Department has held that the New York Labor Law permits employees to seek liquidated damages for the untimely payment of wages even if the wages are no longer past due, *see Vega []*, and as Judge Kovner concluded just months ago, [s]ince *Vega*, every court in this Circuit to consider that decision appears to have followed its construction of the New York Labor Law, *Caul*, 2021 WL 4407856, at *3."); *Nike*, 2022 WL 4007056, at *1 ("The Court also rejects [Defendant's] argument that New York Labor Law § 191 does not create a private right of action.").

As noted in Defendant's brief, there was a New York Supreme Court that issued a decision holding that no private right of action exists. *See Grant v. Global Aircraft Dispatch, Inc.*, 2021 N.Y. Misc. Lexis 11125 (N.Y. Sup. Ct., Queens Cty. Apr. 20, 2021). But it is important to note that the *Grant* court did not consider *Vega*. This is apparent not only from the fact that the decision did not cite to or address it, but because the *Vega* decision was legally binding on that court. *Article 70 of CPLR for a Writ of Habeas Corpus, The Nonhuman Rts. Project, Inc. ex rel. Hercules & Leo v. Stanley*, 16 N.Y.S.3d 898, 916 (N.Y. Sup. Ct. N.Y. Cty. 2015) ("State trial courts must follow a higher court's existing precedent even though they may disagree."). The decision is now on appeal. It also appears the court in *Accosta v. Lorelei Events Grp.*, 2022 WL 195514 (S.D.N.Y. Jan. 21, 2022) was unaware of the *Vega* decision, which was binding on it. *See Carrera v. DT Hospitality Grp.*, 2021 WL 6298656, at *10 (S.D.N.Y. Nov. 1, 2021) ("The Court's prior Report and Recommendation did not address *Vega*, which was an error, insofar as *Vega* is an intermediate appellate decision of the state court to which this Court must defer in the absence of any contrary New York authority establishing that the highest court of the state has decided otherwise.").

Finally, Defendant's cites *Zivkovic v. Laura Christy, LLC*, 2022 WL 1684268 (S.D.N.Y. May 26, 2022), but that case did not mention *Vega*, and had nothing to do with Section 191.

## IV. THERE IS AN EXPRESS PRIVATE RIGHT OF ACTION FOR VIOLATIONS OF NYLL § 191

*Vega*'s holding that "Labor Law § 198 (1-a) expressly provides a private right of action for a violation of Labor Law § 191," 175 A.D.3d at 1146, is well-supported by legislative history, guidance from the New York Department of Labor, case law interpreting analogous provisions of the Fair Labor Standard Act, and common sense.

### A. Legislative Memoranda From 1966 And 1967 Show An Intent To Create A Private Right Of Action With Liquidated Damages From Late Payment Of Wages

NYLL § 198(1-a) expressly provides a private right of action for any "wage claim" in Article Six. In *Vega*, the First Department noted the obvious: late payment of wages is a type of wage claim. *Vega*, 175 A.D. 3d at 1145 ("contrary to defendant's argument that § 198 provides remedies only in the event of nonpayment or partial payment of wages (but not in the event of late payment of wages, the plain language of the statute indicates that individuals may bring suit for any 'wage claim' against an employer")). The legislative comments to the Labor Law show that *Vega* was right: claims for untimely payment under NYLL § 191 are the precise sort of "wage claims" intended to be covered by NYLL § 198 (1-a).

In 1966, the New York Legislature passed a bill repealing the previous iteration of Article Six and enacting a new version which provides the basis for the current law in place today. A memorandum accompanying the bill explained that "[t]he bill clarifies the application of the <u>wage payment provisions</u> for manual workers" by "indicat[ing] that weekly payment of wages applies to manual workers, except those employed by a non-profit organization." Kopel Decl., Ex. 6, Memorandum of the Industrial Commissioner, June 3, 1966, Bill Jacket, L 1966, ch. 548 (pp. 4 of 12) (emphasis added).

In 1967, the Legislature enacted Section 198, allowing for a private cause of action with a

liquidated damages provision.  According to the memorandum accompanying the bill, its purpose was "[t]o assist the enforcement of the wage payment … laws by imposing greater sanctions on employers for violation of those laws."  Kopel Decl., Ex. 7, Memorandum of the Industrial Commissioner, April 5, 1967, Bill Jacket, L 1967, ch. 310 (pp. 6 of 16).[2]  Again, there is no reason to believe that a statute meant to cover "wage payment laws" was intended to be construed in a manner that it should not cover the "wage payment provisions" from one year earlier.

To the contrary, the memorandum makes clear that the purpose of the liquidated damages provision of the bill as to "compensate the employee for the loss of the use of the money to which he was entitled."  Kopel Decl., Ex. 7, pp. 5 of 16.  That is the *precise* injury experienced by workers receiving their wages late.  And in a section titled "arguments in support of the bill," the memorandum explains that bill sought to remedy a scenario where employers "will have had the free use of their employees' money for some time and their employees will have been seriously inconvenienced.  The calculation of interest on the money due would be difficult as it would have accrued in small amounts week by week.  This bill follows the example of the Federal Fair Labor Standards Act in providing an easily-calculable formula for liquidated damages."  This shows a legislative intent for the liquidated damages provision to be used as a replacement for small amounts of weekly interest lost.

The 1967 Memorandum makes clear that the Legislature considered and rejected Defendant's argument that the law would subject employers to "draconian damages."  MTD at 3. It notes that "[s]ome persons may claim that the imposition of liquidated damages is unreasonable."  Kopel Decl., Ex. 7, pp. 5 of 16.  However, the liquidated damages provision was passed anyway in the hopes that it "would establish one more safeguard to assure employees or

---

[2] *Available at* https://nysl.ptfs.com/data/Library1/pdf/NY200060392_L-1967-CH-0310.pdf

proper payment of wages under the law and would thus be a deterrent against abuses and violations." Kopel Decl., Ex. 7, pp. 13 of 16. This extra "safeguard" was sorely needed.

In sum, the Legislature explained its intentions at the time it passed the statutes that it was creating a private right of action for liquidated damages specifically to "compensate the employee for the loss of the use of the money to which he was entitled." Kopel Decl., Ex. 7, at pp. 5 of 16; *see also Beh*, 2021 WL 3914297, at *3 ("Given the importance the legislature attached to the timely payment of wages, it would 'promote the legislative purpose of the statute' to recognize a private right of action.) (citing *Vega*, 175 A.D.3d at 1146).

### B.    Wages Become "Unpaid" If They Are Not Paid When Due

Defendant claims that "without a claim for unpaid wages, Plaintiff's claim fails as a matter of law because no private right of action exists for an untimely pay violation" of Section 191. MTD at 17; *see also id.* ("Alleging TSC failed to pay Plaintiff on a timely basis … is not the equivalent to alleging Plaintiff was underpaid."). Defendant is wrong. There is no meaningful difference between late payment and unpaid wages—at the end of the first week of each biweekly pay period, Defendant failed to pay Plaintiff's wages. That is nonpayment. The "underpayment" and "amount of wages found to be due" at that time was the entire week's pay. The First Department explained this: "[t]he moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required." *Vega*, 175 A.D.3d at 1146. Any holding otherwise would allow an employer to "cure a violation and evade the statute by paying the wages that are due before the commencement of an action." *Id.* at 1145; *see also Carrera*, 2021 WL 6298656, at *10 ("Accordingly, liquidated damages are available under Labor Law 198 (1-a) to provide a remedy to workers complaining of untimely payment of wages, as well as nonpayment or partial payment of wages."); *accord Zara*, 2022 WL 3285275, at *11.

As the Ninth Circuit explained when rejecting this same argument in the FLSA context, "[Defendants] urge us to distinguish between late payment and nonpayment, but offer us no principled way to make such a distinction. We cannot come up with one either… Any kind of sliding scale [] would force employees, employers, and courts alike to guess when 'late payment' becomes 'nonpayment.'" *Biggs v. Wilson*, 1 F.3d 1537, 1539-40 (9th Cir. 1993).

The Ninth Circuit was right, and its rationale is equally applicable here. Defendant does not and cannot explain any distinction between late payment and nonpayment. How long must an employee wait until a purported late payment becomes nonpayment, and how are courts meant to draw such a distinction? Would a claim by an employee whose wages were withheld for three weeks, three months, or three years still be a non-wage claim for late payment? According to Defendant, the answer would be yes. Under this interpretation, the liquidated damages provision of Section 198 (1-a), intended to deter violations of the statute, could never be imposed for nonpayment of wages so long as payment was made prior to commencement of a lawsuit. Indeed, that was the holding of the Trial Court in *Global Aircraft* decision, upon which Defendant relies. *See Global Aircraft,* 2021 WL 6777500, at *3 (N.Y. Sup. Queens Cty. Apr. 20, 2021) (holding that the plaintiff had no private claim because "all wages due were paid prior to the commencement of this action"). That undermines the entire purpose of the statue. *See Biggs,* 1 F.3d at 1539 ("If a payday has passed without payment, the employer cannot have met his obligation to 'pay' … unless there is a due date after which minimum wages become unpaid, imposing liability for both unpaid minimum wages and liquidated damages would be meaningless.").

### C. The New York Department Of Labor Has Explicitly Held That A Private Right Of Action Exists

Importantly, the New York Department of Labor ("DOL") has long held that a private right of action exists. Indeed, in an October 28, 2010 opinion letter, the DOL reiterated that NYLL

§ 191 is enforceable by a private right of action. *See* Kopel Decl., Ex. 8. In response to the employer's question as to whether employees may be required to "sign-off" on their timesheets, the Department of Labor responded that while an employer could require an employee to sign off on the time sheet, the employee's signature "neither relieves the employer of its obligations under []Section [191], nor does it prevent an employee from filing a complaint with this Department or *bringing an action for a violation of [NYLL § 191.]*" *Id*. at pp. 4 (emphasis added). Thus, it is the view of New York's DOL that employees can bring private suits for violations of NYLL § 191.

The "[i]nterpretation of a statute by the agency charged with its enforcement is, as a general matter, given great weight and judicial deference so long as the interpretation is neither irrational, unreasonable nor inconsistent with the governing statute." *Moran Towing & Transp. Co. v. N.Y. State Tax Com.*, 72 N.Y.2d 166, 173 (1988). Therefore, the DOL's opinion letter represents the agency's interpretation of NYLL § 191 and should be given judicial deference.

## V. PLAINTIFF IS ENTITLED TO LIQUIDATED DAMAGES AND INTEREST

Relying on *IKEA U.S. Inc. v. Indus. Bd. of Appeals*, 241 A.D.2d 454 (2d Dept. 1997), Defendant claims that "civil penalties under NYLL § 218 is the appropriate remedy for violations of NYLL § 191." MTD at 19. This argument has been routinely rejected because "*Ikea* does not address whether employees may obtain liquidated damages for untimely payments; it simply assessed whether the state Commissioner of Labor had proffered substantial evidence that a particular employer violated Section 191." *Rodrigue*, 2021 WL 3848268, at *5; *see also Mabe*, 2021 WL 1062566, at *6 ("Defendant argues that the Second Department's decision in *IKEA* contradicts *Vega*. The Court disagrees … *IKEA* did not address whether a private right of action existed or the nature of available damages, liquidated or otherwise, that could be imposed for a violation of § 191(1)(a). *IKEA* also did not address the proper statute for the enforcement of a § 191(1)(a) violation."); *Caul*, 2021 WL 4407856, at *3 (holding *IKEA* "did not controvert the

20

holding of *Vega*" because it "simply assessed whether the state Commissioner of Labor had proffered substantial evidence that a particular employer violated Section 191.").[3]

Although Defendant claims that *Vega* did not address the "overall enforcement scheme or structure of NYLL," that is simply not true.  MTD at 20.  The *Vega* decision based its reasoning on the NYLL's "legislative history" which "reflects that in addition to imposing 'stronger sanctions' to compel employer compliance, '[t]he imposition of liquidated damages will also compensate the employee for the loss of the use of the money to which he was entitled.'  The employee loses the use of money whether he or she is never paid, partially paid, or paid late." *Vega*, 175 A.D.3d at 146 n.2 (quoting Governor's Approval Mem, Bill Jacket, L 1967, ch 310 at 1524; 1967 NY Legis. Ann. at 271); *see also Sorto, v. Diversified Maintenance Systems, LLC* 2020 WL 8413553, at *2 (E.D.N.Y. Nov. 15, 2020) ("Accordingly, allowing for a private right of action is consistent with the objectives of the statute, given that the plaintiff is one of the class of individuals section 191 was designed to protect, a private right of action would promote the legislative purpose of the statute, and permitting such a claim to proceed would be consistent with the legislative scheme."); *accord Beh*, 2021 WL 3914297, at *3.

The *Vega* decision is well-reasoned.  The Second Circuit has explained that NYLL § 198 (1-a), although not identical to the FLSA liquidated damages provision, has "no meaningful differences, and both are designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed."  *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).  This lack of "meaningful differences" was intentional.  "The New York State legislature has now twice

---

[3] Defendant's citation to NYLL § 218 and administrative enforcement actions misses the mark because Section 218 governs what happens "[i]f the commissioner determines that an employer has violated a provision of article six[.]"  *Vega*, and the multitude of caselaw discussed herein, explicitly provide that liquidated damages are the appropriate remedy for violation of Section 191.

amended its liquidated damages statute to conform as closely as possible to the FLSA's liquidated damages provision." *Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 61 (2d Cir. Dec. 7, 2016). These amendments suggest "an interest in aligning NYLL liquidated damages with the FLSA and can be read as a practical recognition of the dual punitive and compensatory effects of an award of liquidated damages under the statute." *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, 2016 WL 4704917, at *17 (S.D.N.Y. Sept. 8, 2016).

Against this backdrop, there is no "persuasive evidence that the state's highest court would reach a different conclusion" than the "state's intermediate appellate court[]" did in the *Vega* decision. Defendant's argument must therefore be rejected.

## VI.     NYLL § 191 ALSO PROVIDES AN IMPLIED PRIVATE RIGHT OF ACTION

Defendant further argues that, based on *Konkur v. Utica Academy of Science Charter Sch.*, 38 NY3d 38 (2022), "no implied private right of action can be created for violations of Article 6 provisions" because doing so would "conflict with *Vega*'s creation of an implied private right of action." MTD at 18. But Defendant's exact argument—along with its reliance on *Konkur*—has been squarely rejected in the NYLL § 191 context by *Elhassa v. Hallmark Aviation Servs., L.P.*, 2022 WL 563264 (S.D.N.Y. Feb. 24, 2022) and *Mabe v. Wal-Mart Assocs., Inc.*, 2022 WL 874311 (N.D.N.Y. Mar. 24, 2022).

Specifically, the Court in *Mabe* held as follows:

> To the extent Defendant contends that the statute already provides an administrative mechanism to enforce Section 191 violations, the legislative history reflects the administrative nature of the Section 191 scheme, and that there is no private right of action in § 198 for a mere untimely payment of wages, *Vega* addressed those concerns. The *Vega* Court found that the purposes of Sections 191 and 198 are to protect employees who are "dependent upon their wages for sustenance" and deter labor law violations. *Vega*, 175 A.D.3d at 1146 (citation omitted). "And contrary to defendants' emphasis on administrative enforcement, Section 198 lets an individual sue even where the administrator declines," *Caul*, 2021 WL 4407856, at *3

22

(citing Vega, 175 A.D.3d at 1147), which the *Vega* Court found to be "consistent with the legislative scheme, as section 198 explicitly provides that individuals may bring suit against an employer for violations of the labor laws, even if the Commissioner chooses not to do so." *Vega*, 175 A.D.3d at 1147.

*Mabe*, 2022 WL 874311, at *6 (citing *Elhassa*, 2022 WL 563264, at *2 ("[T]he question in *Konkur* had to do with the implication of a private right of action [under Labor Law § 198–b, which prohibits wage kickbacks]. *Vega* rested on a different ground.'")).

Accordingly, Defendant's argument should be rejected. *See Sorto*, 2020 WL 8413553, at *3 ("Defendants contend that the statute already provides an administrative mechanism to enforce Section 191 violations, the legislative history reflects the administrative nature of the Section 191 scheme, and the purpose of Section 191 is 'to ensure that employers make payroll payments at all.' But *Vega* addressed those general concerns, finding that the purposes of Sections 191 and 198 are to protect employees who are 'dependent upon their wages for sustenance' and deter labor law violations. And contrary to defendants' emphasis on administrative enforcement, Section 198 lets an individual sue even where the administrator declines.") (internal citations omitted).

## VII. THE COURT IS NOT EMPOWERED TO GRANT DEFENDANT'S MOTION BASED ON A MERE DISAGREEMENT WITH *VEGA*

In large part, Defendant's brief is devoted to trying to convince the Court that *Vega* was wrongly decided. But whether the Court agrees with *Vega* is simply not determinative. Nor is it determinative whether the Court thinks that the New York Court of Appeals would agree with *Vega*. Rather, the standard this Court must use for this motion is there is "persuasive evidence that the state's highest court would reach a different conclusion" from *Vega*. *V.S. v. Muhammad*, 595 F.3d at 432. That is an extremely high bar that Defendant's arguments do not even approach clearing. Indeed, Judge Chen subsequently denied a motion to dismiss a similar claim after previously (and incorrectly) holding that NYLL § 191 did not have a private right of action. Kopel

Decl., Ex. 9, *Quintanilla v. Kabo Pharms., Inc.*, Case No. 19-cv-06752, Hrg. Tr. (E.D.N.Y. June 30, 2020).  Judge Chen correctly recognized that her Court was "bound to follow appellate court decisions unless … there is substantial evidence or reason to believe that the Court of Appeals would find otherwise." *Id.* at pp. 17.  As every court to examine the *Vega* decision has recognized, the requisite "persuasive evidence" to part from its holding simply does not exist.

This is not even a close call.  In *Caul v. Petco Animal Supplies, Inc.*, 2021 WL 6805889 (E.D.N.Y. Dec. 21, 2021), the defendant sought certification of the court's denial of its motion to dismiss for interlocutory appeal.  But Judge Kovner denied the motion, stating bluntly that:

> There is not substantial ground for a difference of opinion as to the availability of a private right of action for delayed waged payments under the NYLL.  … Defendants' motion for certification fails to cite any relevant or persuasive conflicting opinions that raise genuine doubt as to the Court's obligation to follow *Vega*.  And defendants have not identified persuasive evidence that the New York Court of Appeals would reach a different conclusion than *Vega*.

*Id.* at *1.  The same is true here.

## VIII.  DEFENDANT'S RULE 23 ARGUMENTS ARE PREMATURE AND MERITLESS

In a footnote, Defendant argues that Plaintiff proposed an impermissible "fail-safe" class definition.  MTD at 7 n.1.  That argument is premature and incorrect.

"A fail-safe class is one whose definition shields the putative class members from receiving an adverse judgment." *Hicks v. T.L. Cannon Corp.*, 35 F.Supp.3d 329, 356 (W.D.N.Y. 2014).  There is no fail-safe class here because if Defendant prevails on its arguments as to private right of action or Article III standing, no class member will be shielded from said adverse judgment.  The use of the term "manual worker" in Plaintiff's class definition does not alter the Court's analysis.  "The mere fact that the subclass definition includes the factual predicates for a successful claim does not, by itself, present a barrier to certification. *Hardgers-Powell v. Angels in Your*

*Home LLC*, 330 F.R.D. 89, 102 (W.D.N.Y. 2019) (internal citation omitted). For this reason, another court rejected an argument that a proposed NYLL § 191 was a "failsafe" because it included the term "manual worker." *See Nike*, 2022 WL 4007056, at *2 ("Defendant's characterization of Plaintiffs' class as a 'failsafe' class is simply incorrect.").

Moreover, Plaintiff can narrow or add detail to the class definition based on information learned in discovery. For this reason, a motion to strike would be "premature and depend[] in part on the outcome of discovery as to the plaintiff's allegations." *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012); *see also Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 515 (S.D.N.Y. 2015) ("[G]iven the hesitancy of courts in the Second Circuit to strike class allegations before a class certification motion is filed, the Court will therefore not strike Plaintiff's class allegations"). In this vein, Judge Brown recently declined to dismiss the identical class definition at the pleading stage in another NYLL § 191 case, because "that's appropriately saved for the class certification juncture." *Rodriguez v. Williams-Sonoma, Inc.*, Case No. 22-cv-02436-GRB-JMW (E.D.N.Y.), Kopel. Decl., Ex. 2, at pp. 22-23.

Finally, Defendant argues that the "proposed class definition fails to mention … the purported 'time value of money' theory of injury-in-fact." MTD at 7 n.1. That makes no sense. A class definition identifies the scope of proposed class membership, it is not an entire pleading. Moreover, the time value of money is universal and does not differ from person to person.

## CONCLUSION

Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss in its entirety.[4]

---

[4] Defendant should not be permitted to serve reply papers in this matter because its Notice of Motion (ECF No. 11) made no mention of such. *See* Local Rule of Civil Procedure 7(a)(1) ("A moving party who intends to file and serve reply papers must so state in the notice of motion.").

Dated:  September 13, 2022

Respectfully submitted,

By:     /s/ Yitzchak Kopel
                Yitzchak Kopel

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (*admitted pro hac vice*)
Alec M. Leslie (*admitted pro hac vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email:  ykopel@bursor.com
            aleslie@bursor.com

**CONNORS LLP**
Andrew M. Debbins
1000 Liberty Building
Buffalo, NY  14202
Telephone: (716) 852-5533
Email: amd@connorsllp.com

*Attorneys for Plaintiff*