UNITED STATES DISTRICT COURT FILED DEC - 1 2022 MARY C. LOEWENGUTH, CLERK WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

REBECCA DAY, individually and on behalf of All others similarly situated,

Plaintiff,

v.

TRACTOR SUPPLY COMPANY,

Defendant.

22-CV-489-JLS-MJR

REPORT AND RECOMMENDATION

**INTRODUCTION**

This case has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) by the Honorable John L. Sinatra, Jr. for all pre-trial matters, including preparation of a report and recommendation on dispositive motions. (Dkt. No. 12). Before the Court is Defendant's motion to dismiss this action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 11). For the following reasons, this Court recommends that the District Court deny Defendant's motion to dismiss.

**BACKGROUND and PROCEDURAL HISTORY**

Rebecca Day ("Plaintiff" or "Day") is a former employee of Tractor Supply Company ("Defendant" or "TSC") who brings this action on behalf of herself and similarly situated TSC employees who engaged in manual work in the course of their employment within the State of New York.[1] (Dkt. No. 1, ¶ 1). Plaintiff was employed at a TSC store in

[1] This Court has subject matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d) because Plaintiff alleges that the total claims of individual members of the proposed class are in excess of $5,000,000, exclusive of interest and costs, and a member of the proposed class is a citizen of a State different from the defendant. (Dkt. No. 1, ¶ 8).

Alden, New York from approximately 2015 to 2017. (*Id.*, ¶ 11). She alleges that at least 25% of her job responsibilities included manual labor, such as organizing and unloading inventory, lifting heavy items onto shelves, cleaning duties, and handling animals. (*Id.*).

Plaintiff asserts a single cause of action against TSC for failure to pay timely wages in violation of New York Labor Law ("NYLL"), Article 6, Section 191. (*Id.*, ¶¶ 18-21). NYLL § 191(1)(a) requires companies to pay manual workers on a weekly basis, unless they have express authorization from the NYS Department of Labor Commissioner to pay on a semi-monthly basis. (*Id.*, ¶ 2). Plaintiff alleges that TSC violated the law by paying her and other manual workers every other week rather than on a weekly basis from approximately June 24, 2016 to September 17, 2019. (*Id.*, ¶ 6). She alleges that for half of each biweekly pay period, she was injured by being temporarily deprived of money owed to her, and she could not invest, earn interest on, or otherwise use monies that were rightfully hers. (*Id.*, ¶ 11). Plaintiff further alleges that TSC received authorization from the DOL on September 17, 2019 to pay its manual workers on semi-monthly basis, but prior to that date, had no authorization to do so. (*Id.*, ¶ 3). Plaintiff seeks the amount of untimely paid wages as liquidated damages, plus attorneys' fees and costs, and pre-judgment and post-judgment interest on behalf of her and the putative class members as provided for by NYLL § 198. (*Id.*, ¶ 21).

On August 19, 2022, Defendant filed the instant motion to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, and Rule 12(b)(6), for failure to state a claim upon which relief can be granted. (Dkt. No. 11). Plaintiff filed a response in opposition to the motion. (Dkt. No. 13; 14). Defendant filed a reply. (Dkt. No. 17). Prior to oral argument, Defendant filed a notice of supplemental

authority. (Dkt. No. 18). On October 27, 2022, the Court heard oral argument on the motion, after which the Court considered the matter submitted for report and recommendation.[2]

**DISCUSSION**

Defendant moves to dismiss Plaintiff's complaint on the grounds that: (1) Plaintiff has not demonstrated standing to bring this action, thus leaving the Court without subject matter jurisdiction; and (2) Plaintiff fails to state a claim upon which relief can granted under NYLL § 191.

*Legal Standards*

As a threshold matter, a court must determine whether it has subject matter jurisdiction over a plaintiff's claims. *Foster-Bey v. Potter*, 296 F. Supp. 2d 195, 201 (D. Conn. 2003). A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A court lacks the judicial power to hear a party's claims when the party does not have standing. *Harty v. West Point Realty*, 477 F. Supp. 3d 163, 166 (S.D.N.Y. 2020) (quoting *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank*, 747 F.3d 44, 48 (2d Cir. 2014)). The plaintiff bears the burden of "showing by a preponderance of the evidence that subject matter jurisdiction exists." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003). A court must accept

[2] On November 2, 2022, Plaintiff filed a notice of supplemental authority (Dkt. No. 21), to which Defendant responded to request that the Court not consider such authority (Dkt. No. 22). The supplemental case submitted by Plaintiff is relevant to this motion and was decided shortly before the Court heard oral argument on this motion. *See Levy v. Endeavor Air Inc.*, 21-CV-4387, 2022 U.S. Dist. LEXIS 201798 (E.D.N.Y. Oct. 22, 2022). The Court has considered the *Levy* decision over Defendant's objections. In addition, on November 29, 2022, Plaintiff filed two notices of supplemental authority regarding decisions in *Bemejo v. Shaker Contrs., Corp.*, 22-CV-1427, 2022 U.S. Dist. LEXIS 213831 (S.D.N.Y. Nov. 28, 2022) and *Rath v. Jo-Ann Stores, LLC*, 21-CV-791, 2022 U.S. Dist. LEXIS 214798 (W.D.N.Y. Nov. 29, 2022), both of which the Court has considered.

as true all material factual allegations in the complaint, but "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). A court may refer to evidence outside the pleadings when resolving questions of jurisdiction under Rule 12(b)(1). *See Luckett v. Burre*, 290 F.3d 493, 496-97 (2d. Cir. 2002) (citations omitted).

A defendant may also move to dismiss a complaint on the ground that the it fails to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To state a claim on which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). In reviewing a complaint in the context of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true all factual allegations and draw all reasonable inferences from those allegations in favor of the plaintiff. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Specifically, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Supreme Court has further instructed that "[d]etermining whether a complaint states a plausible claim for relief [...] requires the [...] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "But where the well-pleaded facts do not permit the court to infer more than

the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

*Article III Standing*

TSC argues that this action must be dismissed pursuant to Rule 12(b)(1) because Day's claimed injury does not satisfy Article III standing requirements. TSC observes that Day has not alleged that she is owed any unpaid wages; only that she was not paid on time and was temporarily deprived of money owed to her. Specifically, Day has alleged that during the entirety of her employment from approximately 2015 to 2017, she was paid every other week, rather than weekly. (Dkt. No. 1, ¶ 11). Thus, for half of each biweekly pay period she "could not invest, earn interest on, or otherwise use these monies that were rightfully hers" and she "lost the time value of that money." (*Id.*). TSC challenges whether Day has plead a cognizable injury-in-fact. TSC argues that Day's allegations are speculative and hypothetical because she has not alleged facts showing specific and concrete plans for use of the funds or how she was forced to forgo those plans because she received wages bi-weekly instead of weekly.

The need for standing to bring a claim in district court is an essential and unchanging part of the case-or-controversy requirement of Article III of the Constitution. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In order to have meet the "irreducible constitutional minimum of standing," a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560-61).

To demonstrate an injury-in-fact, a plaintiff must show "the invasion of a (1) legally protected interest that is (2) concrete and particularized and (3) actual or imminent, not conjectural or hypothetical." *Maddox v. Bank of New York Mellon Trust Co.*, 19 F.4th 58, 62 (2d Cir. 2021). In the recent decision of *Transunion v. Ramirez*, the Supreme Court narrowed Article III standing requirements by holding that a plaintiff cannot establish an injury-in-fact, for purposes of standing, by relying entirely on a risk of future harm. 141 S. Ct. 2190 (2021). Simply stated, "[n]o concrete harm, no standing." *Id.* at 2214. The *TransUnion* Court explained that "[p]hysical or monetary harms readily qualify as concrete injuries under Article III, and various intangible harms—like reputational harms—can also be concrete." *Id.* at 2197. However, the Court also made it clear that "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Id.* at 2205 (internal quotations omitted). "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.*; *see also Harty v. West Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022) ("[A] plaintiff has standing to bring a claim for monetary damages following a statutory violation only when he can show a current or past harm beyond the statutory violation itself.").

Although Day does not claim an underpayment of wages, she does allege that she was repeatedly deprived of her earnings for a period of time and lost the use of that money during that time. This temporary deprivation constitutes a concrete injury. *See Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019) ("[T]he temporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish

Article III standing."); *see Van v. LLR, Inc.*, 962 F.3d 1160, 1164 (9th Cir. 2020) (a temporary loss of use of one's money constitutes an injury in fact for purposes of Article III, since the inability to have and use money to which one is entitled is a concrete injury); *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019) (holding that delay in reimbursing money is an economic injury, which "is the epitome of concrete" for Article III standing purposes). Even though Day ultimately received the entire sum of wages she was owed, this delay of payment, in and of itself, is a concrete harm that suffices for purposes of Article III. *Gillett v. Zara USA, Inc.*, 20-CV-3734, 2022 U.S. Dist. LEXIS 143434, at *16-19 (S.D.N.Y. Aug. 10, 2022) (holding that, even in the wake of *TransUnion*, plaintiff has alleged monetary injury from defendants' withholding his wages beyond when they were legally obligated to pay him, even without any additional facts about how he would have used his wages had they been received in a timely fashion); *see also Jones v. Nike Retail Servs.*, 22-CV-3343, 2022 U.S. Dist. LEXIS 157844 (E.D.N.Y. Aug. 30, 2022) ("The Court flatly rejects Defendant's argument that Plaintiffs must plead 'specific factual allegations pertaining to their financial strategies or investment practices' to establish standing."); *Caul v. Petco Animal Supplies, Inc.*, 20-CV-3534, 2021 U.S. Dist. LEXIS 184652, at *9-10 (E.D.N.Y. Sept. 27, 2021) (finding that late payment of wages is a concrete harm sufficient to establish Article III standing);[3] *but see Rosario v. Icon Burger Acquisition LLC*, 21-CV-4313, 2022 U.S. Dist. LEXIS 11454 (E.D.N.Y. Jan. 21, 2022) (ruling that although late payment of wages can constitute a

[3] Day also cites several unpublished district court cases wherein judges have recently rejected motions to dismiss and found standing for NYLL § 191 claims based on the lost time value of money from delayed wage payments. (Dkt. No. 14, ¶¶ 3-5); *see Rodriguez v. Williams-Sonoma, Inc.*, 22-CV-02436-GRB-JMW (E.D.N.Y. Aug. 5, 2022); *Davis v. Banana Republic, LLC*, 21-CV-6160-KAM (E.D.N.Y. Apr. 5, 2022); *Corporan v. Regeneron Pharmaceuticals, Inc.*, 21-CV-05069-CS (S.D.N.Y. Jan 24, 2022).

concrete harm sufficient to confer standing, a plaintiff must provide factual allegations that he forewent the opportunity to invest or otherwise use the money to which he was entitled to show he suffered an injury); *Adler v. Penn Credit Corp.*, 19-CV-7084, 2022 U.S. Dist. LEXIS 43518, at *24-25 (S.D.N.Y. Mar. 11, 2022) (holding that to satisfy Article III, a lost monetary opportunity claim must be accompanied by allegations of what "specific plans" the plaintiff had "to invest his money"); *Rath v. Jo-Ann Stores, LLC*, 21-CV-791, 2022 U.S. Dist. LEXIS 154200, at *13-21 (W.D.N.Y. Aug. 26, 2022) (Skretny, J.) (acknowledging dispute among authorities on this issue and requiring plaintiff to allege the consequences of biweekly pay, such as the loss of time value of unpaid weekly wages or loss of interest from late paid salary). Further, the Ninth Circuit has ruled that a plaintiff need not "allege specific plans to invest its money into an interest-bearing asset to establish standing based on a temporary deprivation of money." *Van*, 962 F.3d at 1165.

Here, the Court finds that Day's allegations of temporary deprivation of money due to repeated delay in payment of wages constitutes a plausible claim of injury which establishes her standing to bring this action. Although Day has not identified a precise way or ways she would have spent or invested her money, she has alleged that she could not invest, earn interest on, or otherwise use these monies. This is a sufficient pleading of concrete and particularized harm. Indeed, to require Day to allege more specific plans of what she could, or would, have done with her wages had they been paid on time might entail her making the type of speculative or hypothetical allegations the Supreme Court has cautioned against. Accordingly, the Court recommends that TSC's motion to dismiss this claim for lack of Article III standing be denied.

*Private Right of Action under NYLL § 191*

TSC also moves to dismiss the complaint pursuant to Rule 12(b)(6) on the grounds that Day fails to state a claim upon which relief can be granted. First, TSC argues that it was authorized by the Commissioner of the New York State Department of Labor ("DOL") to pay Day and other employees on a bi-weekly basis. Second, it argues that there is no private right of action or liquidated damages remedy available for untimely wage payments under NYLL § 191(1) or other applicable sections of the Labor Law.

On TSC's first argument, neither party disputes that TSC received authorization from the DOL in September 2019 to pay certain New York employees on a bi-weekly basis.[4] However, TSC claims that Day is now attempting to "usurp the authorization TSC received three years ago to claim that TSC is nevertheless still in violation of NYLL § 191(1)(a)" for not paying manual workers on a weekly basis prior to that authorization date. Despite this assertion, the Court finds that the DOL's later authorization for bi-weekly payments does not absolve TSC for any prior violations of the Labor Law. The DOL letter, dated September 30, 2019, plainly indicates that the Commissioner was then granting authority for TSC to pay wages on a bi-weekly basis. (Dkt. No. 18-1). The Commissioner's language in that letter ("Therefore, I hereby grant authorization for Tractor Supply Co. to pay wages to its manual workers employed in New York State on biweekly basis.") is forward-looking and does not indicate an intent to apply the

[4] NYLL § 191(1)(a)(ii) offers the following exemption to weekly pay requirements for employers of manual workers: "[t]he commissioner may authorize an employer which has in the three years preceding the application employed an average of one thousand or more persons in this state or has for one year preceding the application employed an average of one thousand or more persons in this state and has for three years preceding the application employed an average of three thousand or more persons outside the state to pay less frequently than weekly but not less frequently than semi-monthly if the employer furnishes satisfactory proof to the commissioner of its continuing ability to meet its payroll responsibilities."

authorization decision retroactively.[5] (*Id.*). Day has only brought claims for untimely wage payments made prior to September 30, 2019. The limitation of Day's claims to a time period before the DOL granted an exemption to the law fully rebuts TSC's argument that it was authorized to make less frequent payments.

As to whether this claim is actionable, Article 6, Section 191 of the New York Labor Law requires that a "manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." NYLL § 191(1)(a)(i). Article 6, Section 198 creates a cause of action on wage claims for an employee, or the DOL Commissioner, to recover the full amount of any underpayment, as well as liquidated damages, reasonable attorneys' fees, and prejudgment interest. More specifically, it provides:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due, except such liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation of section one hundred ninety-four of this article.

NYLL § 198(1-a).

[5] The Court rejects TSC's assertion that its payroll practices prior to September 2019 were retroactively sanctioned by the DOL because the Commissioner's 2019 authorization was based on review of three years of payroll records and a purported finding of TSC's compliance with its payroll obligations. Neither the submission of this information nor TSC's "continuing ability to meet its payroll responsibilities" is determinative of the legality of its past payroll practices. *See* NYLL § 191(1)(a)(ii). Further, the Court will not speculate as to the DOL's reasons for granting or denying bi-weekly pay authorization to any employer at any point in time.

TSC argues that no private right of action exists here and that civil penalties imposed by the DOL under NYLL § 218 are the appropriate remedy for violations of § 191. *See IKEA U.S. Inc. v. Indus. Bd. of Appeals*, 241 A.D.2d 454, 455 (2d Dept. 1997) (affirming DOL's imposition of a $100 civil penalty under NYLL 218(1) where employer failed to pay manual workers weekly). It is TSC's position that failure to timely pay wages does not constitute an "underpayment" of wages, therefore Day is not entitled to the statutory remedies, including liquidated damages, set forth in NYLL §198(1)(a). TSC also refers to a DOL Opinion Letter dated May 8, 2017 and Board of Appeals decision, *Ribble (d/b/a Perfecto Cleaners)*, PR NO. 06-038, 039 (Indus. Bd. of Appeals, Dec. 19, 2007), which each indicate that violations of § 191's pay frequency requirement would result in imposition of civil penalties pursuant to § 218. (Dkt. No. 11-1, pgs. 19-20).

Day counters that, in addition to substantial case law supporting her position, the legislative history of this statute reflects the New York Legislature's intent to create a private right of action for the wage payment provisions applicable to manual workers, including access to liquidated damages to "compensate the employee for the loss of the use of money to which he was entitled." (Dkt. Nos. 13, pgs. 16-17; 14-6; 14-7, pg. 6 (Memorandum of the Industrial Commissioner, April 5, 1967, Bill Jacket, L. 1967, ch. 310)). Further, Day submits that the DOL has expressly stated, in an Opinion Letter dated October 28, 2010, that NYLL § 191(1) is enforceable by a private right of action. (Dkt. Nos. 13, pgs. 19-20; 14-8).

Despite TSC's assertions, the First Department of the New York State Appellate Division has ruled that § 198 expressly creates a private right of action for violations of § 191's wage provisions. *See Vega v. CM & Associates Construction Mgmt., LLC*, 175

A.D.3d 1144 (1st Dep't 2019) (opining that allowing workers to bring suits promotes the legislative purpose of NYLL § 191, namely, to protect workers who are generally "dependent upon their wages for sustenance"). In *Vega*, the First Department went on to explain that "even if Labor Law § 198 does not expressly authorize a private action for violation of the requirements of Labor Law § 191, a remedy may be implied since plaintiff is one of the class for whose particular benefit the statute was enacted, the recognition of a private right of action would promote the legislative purpose of the statue and the creation of such a right would be consistent with the legislative scheme." *Id.*, at 1146. At this time, the *Vega* decision constitutes guidance from the highest state court to address this issue. This Court must follow the First Department's ruling in the absence of persuasive evidence that the New York State Court of Appeals would find differently. *See V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010) ("This Court is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion.").

Indeed, nearly every federal district court to consider *Vega* has adopted its holding that a private right of action exists for violations of NYLL § 191. *See Rath v. Jo-Ann Stores, LLC*, 21-CV-791, 2022 U.S. Dist. LEXIS 214798 (W.D.N.Y. Nov. 29, 2022) (Skretny, J.) (following *Vega* to hold that a private right of action exists); *Harris v. Old Navy, LLC*, 21-CV-9946, 2022 U.S. Dist. LEXIS 206664, at *24-27 (S.D.N.Y. Nov. 15, 2022) (following *Vega's* "definitive ruling" that an express right of action exists and finding a lack of "persuasive data" to conclude that the Court of Appeals would hold otherwise); *Levy v. Endeavor Air Inc.*, 21-CV-4387, 2022 U.S. Dist. LEXIS 201798, at *13-15 (E.D.N.Y. Oct. 22, 2022) ("the Court joins the chorus of post-*Vega* case law and concludes that § 191

provides a private right of action to enforce the late payment of full wages"); *Katz v. Equinox Holdings, Inc.*, 20-CV-9856, 2022 U.S. Dist. LEXIS 78299, at *12 (S.D.N.Y. Apr. 29, 2022); *Gillett v. Zara USA, Inc.*, 20-CV-3734, 2022 U.S. Dist. LEXIS 143434, at *16-19 (S.D.N.Y. Aug. 10, 2022); *Mabe v. Wal-Mart Assocs.*, 20-CV-591, 2022 U.S. Dist. LEXIS 53492 (N.D.N.Y. Mar. 24, 2022) (opining that late payment of wages is an underpayment of wages thus actionable under New York Labor Law); *Elhassa v. Hallmark Aviation Servs., L.P.*, 21-CV-9768, 2022 U.S. Dist. LEXIS 33051, at *6-7 (S.D.N.Y. Feb. 24, 2022) (finding that "[t]he New York Appellate Division First Department has held that the New York Labor Law permits employees to seek liquidated damages for the untimely payment of wages even if the wages are no longer past due"); *Carrera v. Dt Hospitality Group*, 19-CV-4235, 2021 U.S. Dist. LEXIS 210894, at *28-29 (S.D.N.Y. Nov. 1, 2021), *adopted by* 2021 U.S. Dist. LEXIS 234230 (S.D.N.Y. Dec. 7, 2021); *Caul v. Petco Animal Supplies, Inc.*, 20-CV-3534, 2021 U.S. Dist. LEXIS 184652, at *9-10 (E.D.N.Y. Sept. 27, 2021) ("Section 191 permits a manual worker to bring a civil action for delayed payment of wages – even if the wages have subsequently been paid."); *Rodrigue v. Lowe's Home Ctrs., LLC*, 20-CV-1127, 2021 U.S. Dist. LEXIS 162849 (E.D.N.Y. Aug. 27, 2021); *Sorto v. Diversified Maint. Sys.*, 20-CV-1302, 2020 U.S. Dist. LEXIS 242856 (E.D.N.Y. Dec. 28, 2020); *Duverny v. Hercules Med. P.C.*, 18-CV-7652, 2020 U.S. Dist. LEXIS 37547 (S.D.N.Y. Mar. 3, 2020).

In further support of Day's position, both *Vega* and federal district courts have explained that the late payment of wages is tantamount to a non-payment of wages. *See Vega*, 175 A.D.3d at 1146 ("The moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required."); *see*

*also Carrera; Gillett, supra*. In fact, the Ninth Circuit rejected the contrary argument promoted by TSC, stating: "[defendants] urge us to distinguish between late payment and nonpayment, but offer us no principled way to make such a distinction. We cannot come up with one either…Any kind of sliding scale [] would force employees, employers, and courts alike to guess when 'late payment' becomes 'nonpayment.'" *Biggs v. Wilson*, 1 F.3d 1537, 1539-40 (9th Cir. 1993) (in the context of FLSA claims).

TSC urges this Court not to rely on the *Vega* decision. Indeed, contrary authority exists, with several state and federal courts doubting, or expressly disagreeing, that NYLL creates a remedy for late, but full, payments of wages. *See IKEA, supra; Zivkovic v. Laura Christy, LLC,* 17-CV-553, 2022 U.S. Dist. LEXIS 94839 (S.D.N.Y. May 26, 2022); *Accosta v. Lorelei Events Grp.*, 17-CV-7804, 2022 U.S. Dist. LEXIS 11494, at *10-11 (S.D.N.Y. Jan. 21, 2022) (explaining that while FLSA has been interpreted to require prompt payment of wages, "the NYLL does not appear to provide a similar remedy"); *Grant v. Global Aircraft Dispatch, Inc.*, 2021 N.Y. Misc. LEXIS 11125 (N.Y. Sup. Ct., Queens Cty. Apr. 20, 2021). Importantly, though, neither *Zivkovic*, *Accosta,* nor *Grant* considered *Vega*, and *IKEA* presents no direct holding on this issue. *See Rodrigue* ("*Ikea* does not address whether employees may obtain liquidated damages for untimely payments; it simply assessed whether the state Commission of Labor had proffered substantial evidence that a particular employer violated Section 191").

The strongest authority to support TSC's position is the New York Court of Appeals decision in *Konkur v. Utica Academy of Science Charter Sch.*, 38 N.Y.3d 38 (2022) which found no private right of action for violations of a similar Labor Law section containing anti-kickback provisions. The *Konkur* Court explained, "[w]here the legislature intended

for an article 6 provision to be enforced individually, it expressly provided a private right of action." 38 N.Y.3d at 44. However, *Konkur* did not address § 191 and did not overrule or even discuss *Vega*. As reasoned by the District Court in *Elhassa*, "the question in *Konkur* had to do with the implication of a private right of action for a different provision of the NYLL. *Vega* rested on a different ground. *Vega* did not hold that a private right of action was implied for the late payment of wages. It concluded that the NYLL 'expressly provides a private right of action for [the late payment of wages].'" 2022 U.S. Dist. LEXIS 33051, at *7.

Further, a Court in this District recently distinguished *Konkur* and explained its reasoning as follows: "this Court believes that the State's highest court would conclude that delayed payment is a form of underpayment ... Thus, a manual worker has a private right of action under Labor Law § 191 to enforce timely, complete payment of wages." *See Rath*, 2022 U.S. Dist. LEXIS 214798, at *18. This Court agrees with the *Rath* Court in its conclusion that the combination of Sections 191 and 198(1-a) creates an express private right of action for untimely wage payments. *See id*. ("Section 191 creates the substantive right for the manual employee to timely and complete wage payments and § 198(1-a) furnishes the procedures and remedies available for violations.").

Lastly, TSC argues that if liquidated damages, rather than civil penalties, for late wage payments are allowed, the result would be large damages assessments that would "crush both large and small employers." This Court recognizes TSC's concern but nonetheless concludes, as recognized in *Vega*, that liquidated damages are the appropriate remedy for violations of § 191. *See Rath*, at *22 ("Labor Law § 198(1-a) was amended to address the manual worker's loss of money, whether it is nonpayment, partial

payment, or (as alleged here) delayed payment by including liquidated damages as a remedy."); *see also Bemejo v. Shaker Contrs., Corp.*, 22-CV-1427, 2022 U.S. Dist. LEXIS 213831, at *15 (S.D.N.Y. Nov. 28, 2022) ("Plaintiffs are entitled to recover liquidated damages equal to the total amount of all wages that were not paid in accordance with the law, including liquidated damages both for overtime wages that were not paid at all and for wages that were paid late.").

Accordingly, the Court recommends that TSC's motion to dismiss for failure to state a claim be denied.

## CONCLUSION

For the foregoing reasons, it is recommended to the District Court that defendant's motion to dismiss the complaint be denied in its entirety. (Dkt. No. 11).

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Sinatra.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).*

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

**SO ORDERED.**

DATED: November 30, 2022
Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge